IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. |
| RELIABLE MAINTENANCE SOLUTIONS, INC., | 2:24-cv-00093-RWS-JCF |
| | JURY TRIAL DEMAND |
| Defendant. | |

# COMPLAINT

This is an action under the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate provide relief to Tracy Bing, who was adversely affected by the unlawful employment practices. The Equal Employment Opportunity Commission (the "Commission" or the "EEOC") alleges that Defendant Reliable Maintenance Solutions, Inc. discriminated against Bing when it failed to hire him because of his disability.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 (the "ADA"), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Gainesville Division.

## PARTIES

3.      Plaintiff, the EEOC, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.      Defendant Reliable Maintenance Solutions, Inc. is a corporation organized under the laws of the State of Georgia.

5.      At all relevant times, Defendant Reliable Maintenance Solutions, Inc. has continuously been doing business in the State of Georgia and has continuously had at least 15 employees.

6.      At all relevant times, Defendant Reliable Maintenance Solutions, Inc. has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

7.      At all relevant times, Defendant Reliable Maintenance Solutions has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

9.      Defendant has engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. §§ 12112(a), (b), and (d), since at least April 2021, when Defendant discriminated against Bing by failing to hire him because of his disability.

10.     Bing is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). As a result of the amputation of his right arm, Bing has an impairment that substantially limits one or

more major life activities, such as his musculoskeletal function and his ability to perform manual tasks.

11. Bing has years of experience operating dump trucks, both before and after his right-arm amputation.

12. By March 2021, Bing had over three years of experience operating dump trucks without his right arm.

13. Defendant operates a business that provides, among other services, staffing to clients in need of drivers to operate dump trucks.

14. In or around March 2021, Bing applied to work for Defendant as a Dump Truck Operator.

15. Defendant's job posting required only that applicants had a license to operate a vehicle and had access to transportation.

16. At the time he applied to work for Defendant as a Dump Truck Operator, Bing met Defendant's listed qualifications and was performing a substantially similar role for another company.

17. On or about March 10, 2021, Bing had a preliminary interview for the position with Defendant's Equipment Operator Manager.

18. During the interview, the Equipment Operator Manager assured Bing that his status as an amputee would not be an impediment to hiring.

19. After the interview, the Equipment Operator Manager instructed Bing to complete an online safety training, and he told Bing that Defendant would get Bing "straight to work" after Bing completed the training.

20. Bing completed the required training on or about March 21, 2021.

21. The next day, the Equipment Operator Manager told Bing that he "did great" on the training and that he could "get to work" upon his submission to a drug test and the completion of other hiring paperwork.

22. On or about March 24, 2021, Defendant's Vice President and Maintenance Manager contacted the Mine Safety and Health Administration ("MSHA") to inform MSHA that Defendant was hiring "a man who has a missing arm" and to inquire into whether Bing could safely climb into and out of a dump truck.

23. The Vice President and Maintenance Manager emphasized to MSHA that Bing "had a great work history and has been driving dump trucks for years."

24. The Equipment Operator Manager then informed Bing that Defendant would need to await word from MSHA before Bing could be hired.

25. Separately, the Vice President and Maintenance Manager reached out to a client of Defendant to discuss whether the client was comfortable with Bing's operation of its equipment.

26. In doing so, the Vice President and Maintenance Manager offered to retrofit trucks to ease Bing's ingress and egress into or to otherwise ensure the use of an assistive lanyard in the interest of Bing's safety.

27. On or about March 26, 2021, after multiple inquiries to the Equipment Operator Manager about the status of the matter with MSHA, Bing contacted a representative of MSHA himself to ask whether MSHA had any issue with a single arm amputee working at a covered job site.

28. The MSHA representative with whom Bing spoke told Bing that MSHA had no say in who a private entity employs to work on a covered job site.

29. On or about March 31, 2021, the Equipment Operator Manager told Bing that "MSHA came back with an inconclusive answer." The Equipment Operator Manager further stated that Defendant had reached out to its "customers and explained the situation" and that those customers had stated that they "were uncomfortable because MSHA wasn't able to come to a conclusion."

30. On or about April 1, 2021, the Equipment Operator Manager told Bing that "the inconclusive answer is the answer."

31. Defendant never hired Bing as a Dump Truck Operator.

### *Failure to Hire – Disability*

32. Bing is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12101 and 1211(8):

   a. Bing has an impairment, a right-arm amputation, that substantially limits major life activities, including his ability to perform manual tasks and the operation of the major bodily functions of his musculoskeletal system.

   b. At all times relevant to this action, Bing was qualified to perform the essential functions of the job of a Dump Truck Operator, with or without a reasonable accommodation.

33. Defendant failed to hire Bing because of his disability.

34. The unlawful employment practices complained of in paragraphs 14 to 31 were intentional.

35. The unlawful employment practices complained of in paragraphs 14 to 31 were done with malice or with reckless indifference to the federally protected rights of Bing.

## PRAYER FOR RELIEF

WHEREFORE, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all other persons in active concert or participation with it, from failing to hire applicants because of their disabilities.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices.

C. Grant a judgment requiring Defendant to pay appropriate back wages, in an amount to be determined at trial, and prejudgment interest to Bing.

D. Order Defendant to make whole Bing, by providing the affirmative relief necessary to eradicate the effects of its unlawful practices, including but not limited to an offer of employment or front pay in lieu of such an offer.

E. Order Defendant to make whole Bing by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in paragraphs 14 to 31, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.    Order Defendant to pay Bing punitive damages for their malicious and reckless conduct, as described in paragraphs 14 to 30 above, in amounts to be determined at trial.

G.    Grant such further relief as the Court deems necessary and proper in the public interest.

H.    Award the EEOC its costs in this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

ROBYN M. FLEGAL
Supervisory Trial Attorney

*/s/ Fahad A. Khan*
Fahad A. Khan
Trial Attorney

Georgia Bar No. 442892
fahad.khan@eeoc.gov

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, GA 30303
(470) 531-4811
(404) 562-6905 (facsimile)

10